# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GONZALO LINARES and BLANCA LINARES,<br><br>    Plaintiffs<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE SPECIALTY UNDERWRITING AND RESIDENTIAL FINANCE TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-BC4, ALIAS, NATIONSTAR MORTGAGE, LLC, JOHN DOE, ALIAS,<br><br>    Defendants | C.A. No. 16-481-S-LDA |

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Now come U.S. Bank National Association, as Trustee for the Holders of the Specialty Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-BC4 (the "Trust"), and Nationstar Mortgage, LLC ("Nationstar," collectively, the "Defendants"), and respectfully request this Court dismiss Gonzalo Linares' and Blanca Linares' (collectively, the "Plaintiffs") Amended Complaint (the "Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6), as Plaintiffs' fail to state a claim on which relief could be granted.

  **I.**  **FACTS AND TRAVEL**

Unless otherwise noted, the facts are taken from the Amended Complaint.  On or about June 12, 2006, Plaintiffs executed a promissory note in favor of Wilmington Finance, Inc. ("Wilmington") in the principal amount of Two Hundred Thirty-Two Thousand and 00/100

Dollars ($232,000.00) (the "Note"). *See* Amended Complaint at ¶ 4. A copy of the Note is attached hereto as **Exhibit A**.[1] Contemporaneously therewith, Plaintiffs granted a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Wilmington, on property located at 27 Chandler Street, North Providence, Rhode Island (the "Property") as security for the repayment of the Note (the "Mortgage"). *See* Amended Complaint at ¶ 3. A copy of the Mortgage is attached hereto as **Exhibit B**. MERS ultimately assigned the Mortgage to the Trust. Nationstar services the Note and Mortgage for the Trust.

Plaintiffs defaulted on their obligations under the Note by failing to make the monthly payment due in June 2010, and have remained in default for the past six years. As alluded to in the Amended Complaint, notices were sent to Plaintiffs notifying them of their default. *See* Amended Complaint at ¶¶ 45, 54-55. Specifically, agents of the Trust sent to the Plaintiffs a notice of default on February 7, 2013. A copy of the February 7, 2013 Notice of Default (the "Notice of Default") is hereby attached as **Exhibit C**.

The Trust scheduled a foreclosure of the Mortgage for December 16, 2014. *See* Amended Complaint at ¶ 8. That foreclosure was cancelled; in order to foreclose the Trust would have to re-notice the foreclosure from the start, in accordance with state law. *See* Amended Complaint at ¶ 17.

Plaintiffs filed the original complaint on December 16, 2014 seeking an injunction on the limited basis that Plaintiffs were entitled to receive notice under R.I. Gen. Laws § 34-27-3.2 (hereinafter, the "Original Complaint"). Plaintiffs moved to amend their complaint on

---

[1] This Court need not convert this matter into a Rule 56 motion, but may take facts outside the four corners of the Complaint into consideration under a Rule 12(b) standard because the Court "may augment the[] facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir.2011)).

Sunday, June 12, 2016. Plaintiffs' motion was granted, and Plaintiffs filed their Amended Complaint on June 28, 2016. Service was effected on Nationstar—a newly added defendant—on Saturday, August 13 2016, and Nationstar subsequently removed the case to this Court on August 30, 2016.

## II.    STANDARD OF REVIEW

"[T]he Court must construe the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences." *Lessard v. Tyco Elecs. Corp.*, No. 09-112 S, 2009 WL 3319784, at *3 (D.R.I. 2009) (internal citations omitted). "While well-pleaded facts are accepted as true, unsupported conclusions or interpretations of law are rejected." *Ward v. Lotuff*, 2009 WL 3615970, at *1 (D.R.I. 2009) (internal quotations omitted). Similarly, the Court is not "required to take every single allegation at face value." *Wilson v. HSBC Mortg. Servs. Inc.*, 744 F.3d 1, 7 (1st Cir. 2014). Instead, the general rule of accepting well-pleaded facts as true exempts facts that are "conclusively contradicted by . . . concessions or otherwise." *Id.* (citing *Soto-Negrón v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003)). Moreover, "[w]hen allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Peñalbert–Rosa v. Foruno-Burset*, 631 F.3d 592, 595; *see also, Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 9 (1st Cir. 2011) (explaining that even though an averment may be couched as a factual allegation, it can be "so subjective that it fails to cross 'the line between the conclusory and the factual'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 n. 5 (2007)).

Accordingly, to survive a motion to dismiss, a complaint "must allege 'a plausible

3

entitlement to relief.'" *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008) (quoting *Twombly*, 550 U.S. at 559). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *see Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012) ("Plausible, of course, means something more than merely possible . . . .") (citing *Iqbal*, 556 U.S. at 678-79). Further, the plaintiff must allege facts supporting "each material element necessary to sustain recovery under some actionable legal theory." *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (internal quotation marks omitted). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Thomas*, 542 F.3d at 948.

### III. ARGUMENT

#### A. Plaintiffs Cannot State A Claim For Breach of Contract Where the Notices Provided Complied with the Contracts' Terms.

Plaintiffs claim that the Trust breached its contract with them by failing to send certain required notices under the Note and Mortgage. *See* Amended Complaint at ¶¶ 9-10, 22-23, 29-30. Plaintiffs' claims fail because the notices adhere to the terms of the Note and Mortgage.

The Mortgage states that:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. . . .
>
> If Lender invokes the STATUTORY POWER OF SALE, Lender

4

> shall mail a copy of a notice of sale to Borrower as provided in Section 15.

**Exhibit B**, p.13. Similarly, the Note provides that:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**Exhibit A**, p. 3.

The Plaintiffs allege that they did not receive the initial notice of default contemplated in the Mortgage and the Note. *See* Amended Complaint, at ¶ 23. However, agents of the Trust sent to the Plaintiffs the Notice of Default,[2] which clearly conforms to the contractual requirements.

The Notice of Default specified the default, the action required to cure the default, a cure date not less than thirty days from the date of the default notice, and that failure to cure the default may result in acceleration of all sums owed and secured by the Security Instrument. *See* **Exhibit C**, pp. 1-2. Furthermore, the Notice of Default also includes both a notice of the right to reinstate after acceleration, and a notice that "[y]ou have the right to take legal action to defend a foreclosure if you claim that the account is not in default or if you believe that you have any other defense to the foreclosure." *See* **Exhibit C**, p. 4. Thus, the Notice of Default perfectly meets the requirements laid out in the Note and Mortgage. *See* **Exhibit A**, p. 3; **Exhibit B**, p. 13; **Exhibit C**, pp. 1-2, 4. Where the Trust complied with the requirements of the Mortgage and Note regarding the notice of default, the Trust cannot have breached its contract. Thus, this Court

---

[2] The Mortgage also provides that "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." *See* **Exhibit B**, p. 10.

should dismiss Count I with prejudice.

      **B.    Plaintiffs Cannot State A Claim For Violation Of The Implied Covenant Of Good Faith And Fair Dealing.**

Plaintiffs further allege that the Trust violated the covenant of good faith and fair dealing, by (1) failing to comply with the express notice requirements of the Note and Mortgage, and; (2) failing to send a notice of right of mediation pursuant to R.I. Gen. Laws § 34-27-3.2 (a "Mediation Notice"). *See* Amended Complaint at ¶¶ 30-31. Plaintiffs' claims under Count II fail as a matter of law for the following reasons: (1) there is no separate cause action for the breach of the covenant of good faith and fair dealing because there was no underlying breach of contract; (2) there is no mediation requirement for Plaintiffs' loan under contract or law, and; (3) there are no recognizable damages.

      1.    <u>Plaintiffs Cannot Sustain A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Because That Is Not A Separate Cause Of Action Under Rhode Island Law</u>

Plaintiffs allege that by failing to send the Notice of Default and Mediation Notice, the Trust breached the implied covenant of good faith and fair dealing. *See* Amended Complaint at ¶¶ 31. However, the Notice of Default was sent in compliance with the requirements of the Note and Mortgage. *See* **Exhibit A**, p. 3; **Exhibit B**, p. 13; **Exhibit C**, pp. 1-2, 4. It is well established that the implied covenant of good faith and fair dealing cannot be used to rewrite the contract—the duty of good faith merely requires parties to perform the obligations actually expressed in the contract. *See T.G. Plastics Trading Co. Inc. v. Toray Plastics (America), Inc.*, 958 F.Supp.2d 315, 327 (D.R.I. 2013). Moreover, it is also settled that in Rhode Island such a violation does not give rise to a separate tort, but rather only gives rise to an action for breach of contract. *See Ross-Simons of Warwick v. Baccarat, Inc.*, 66 F.Supp.2d 317, 329 (D.R.I. 1999); *A.A.A. Pool Service & Supply, Inc. v. Aetna Cas. & Sur. Co.*, 395 A.2d 724, 725

(R.I. 1978). In this case, where no breach of contract took place, no breach of the covenant of good faith and fair dealing can be found. *T.G. Plastics Trading Co. Inc.*, 958 F.Supp.2d at 326-27; *Ross-Simons of Warwick v. Baccarat, Inc.*, 66 F.Supp.2d at 329-30.

2. Plaintiffs Are Not Entitled To A Mediation Notice Under Law Or Contract.

Plaintiffs specifically allege that the Trust violated the implied covenant of good faith and fair dealing by failing to send a Mediation Notice. *See* Amended Complaint at ¶¶ 30-31. However, there is no underlying violation of the implied covenant of good faith and fair dealing, as there is no right to a Mediation Notice. *See Ross-Simons of Warwick v. Baccarat, Inc.*, 66 F.Supp.2d at 329-30. In this case, the Note and Mortgage provide for certain, distinct notices to be provided; a right to mediation is not one such notice. *See* **Exhibit A**, p. 3; **Exhibit B**, p. 13.

There is no requirement under the contracts to offer mediation. *See* **Exhibit A**, p. 3; **Exhibit B**, p.13. There is also no legal requirement to offer mediation or send a Mediation Notice in order to foreclose this mortgage. *See* R.I. Gen. Laws § 34-27-3.2(o) ("The provisions of this section shall not apply if: . . . (2) The date of default under the mortgage is on or before May 16, 2013."). While it is true that the *Fontaine* court[3] determined that the amendment to § 34-27-3.2 was retroactive, the General Assembly overturned the *Fontaine* decision when it amended § 34-27-3.2 to expressly exempt Plaintiffs' Note and Mortgage from any right to a Mediation Notice. Since the original foreclosure was canceled and did not proceed in light of *Fontaine*, the General Assembly's re-writing of the statute moots any claim Plaintiffs have to receive a Mediation Notice.

---

[3] The Rhode Island Superior Court decided, in *Fontaine v. US Bank Nat'l Ass'n*, No. PC 2015-0216, 2015 WL 2449536, at *1, *9 (R.I. Super. Ct. May 15, 2015) that a 2014 amendment to R.I. Gen. Laws § 34-27-3.2 functioned to retroactively require all foreclosures, regardless of default date, to first include a Mediation Notice.

Moreover, Plaintiffs were already given an opportunity to mediate. In the Plaintiffs' bankruptcy proceedings, the Trust, through Nationstar, engaged in loss mitigation proceedings with the Plaintiffs. *See* Loss Mitigation Status Report Filed by Creditor, at Docket No. 120, *and* Order Vacating Request for Loss Mitigation, at Docket No. 124, *In re Linares*, No. 08-11860 (Bankr. D.R.I. July 19, 2010) While those proceedings resulted in a determination that the Plaintiffs did not qualify for a loan modification, those proceedings are materially equivalent to the treatment Plaintiffs would have received in mediation. Thus, the claim that, with no current foreclosure underway, having no explicit obligation under the contract to offer mediation and having materially offered mediation and work-out procedures to the Plaintiffs, the Trust has nevertheless violated its implied covenant of good faith and fair dealing by failing to send a notice to Plaintiffs cannot succeed. *See T.G. Plastics Trading Co. Inc.*, 958 F.Supp.2d at 327; *Ross-Simons of Warwick v. Baccarat, Inc.*, 66 F.Supp.2d at 329.

   3. <u>Plaintiffs Cannot Sustain A Claim for Breach Of The Implied Covenant Of Good Faith And Fair Dealing Because They Have No Recognizable Damages</u>

Finally, Plaintiffs fail to state a claim for which relief can be granted where the foreclosure in question was voluntarily stopped prior to court order. Without a foreclosure pending, and two years since the last foreclosure was pending, there are no damages for breach of contract even if one existed. Without damages, Plaintiffs cannot sustain a breach of contract action. *See Capalli v. BJ's Wholesale Club, Inc.*, 904 F.Supp.2d 184, 193 (D.R.I. 2012) (granting motion for summary judgment in favor of defendant, who allegedly breached contract to provide 12 months of membership due to allegedly improper renewal policies, as against instances where no damages had occurred) (citing *Guzman v. Jan-Pro Cleaning Systems, Inc.*, 839 A.2d 504, 508 (R.I. 2003)); *DiMartino v. Aquidneck Court Associates (In re DiMartino)*, 108 B.R. 394, 403 (D.R.I. 1989) (holding that warranty given and breached by seller of building to buyer of

building did not give rise to triable cause of action where bankruptcy court found no damages resulting from said breach).

In this case, Plaintiffs' only alleged damages are attorneys' fees and costs. *See* Amended Complaint at ¶ 32. In Rhode Island those are not recognizable damages absent a contractual or statutory basis for them, which in this case does not exist. *See In re Janet S. Bagdis Living Trust*, 136 A.3d 1122, 1129 (R.I. 2016) ("we have recently affirmed the proposition that "we typically adhere steadfastly to the American Rule that, in the absence of a statute providing otherwise, each litigant is responsible for the litigant's own legal expenses.") (citing *Shine v. Moreau*, 119 A.3d 1, 9 (R.I. 2015)); *see also* R.I. Gen. Laws § 34-27-3.2 (making no reference to attorneys' fees and costs); **Exhibit A** (same); **Exhibit B** (providing that *mortgagee* may charge costs of defending default to mortgagor). Thus, even if a failure to send a Mediation Notice were a violation of the implied covenant of good faith and fair dealing, Plaintiffs cannot sustain the cause of action where there are no damages.

   **C. Count IV Fails To State A Claim For Which Relief Can Be Granted.**

Plaintiffs allege in Count IV that they have suffered violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), because of charges improperly made to their account by Nationstar. *See* Amended Complaint at ¶¶ 54-55. Count IV fails for the following reasons: (1) the alleged FDCPA violations are barred by the statute of limitations; (2) the Amended Complaint fails to meet the appropriate pleading standard, and; (3) the entire count is derivative of Counts I and II, whose failure removes any basis for this claim.

   1. <u>The FDCPA Claim Is Barred By The Statute Of Limitations</u>

     a. *Plaintiffs' Claimed FDCPA Violation Took Place More Than One Year Ago, And There Is No Continuing Violation Theory*

Plaintiffs have only specifically alleged one kind of error for their FDCPA

9

claim—legal fees and costs allegedly improperly charged to the Plaintiffs' account for the Trust's enforcement of the Mortgage. *See* Amended Complaint at ¶¶ 55. The Plaintiffs claim that these errors began as of June 12, 2015 in order to be within the 1-year statute of limitations for the FDCPA. *See* 15 U.S.C. § 1692k(d) (establishing a one-year statute of limitations on actions for damages under the FDCPA). However, Plaintiffs cannot arbitrarily pick a claim accrual date to suit themselves. Plaintiffs' FDCPA claims, if any, reach far beyond the one-year statute of limitations, thereby barring Count IV.

The Amended Complaint is drafted in such a way as to suggest that Plaintiffs were allegedly improperly charged attorneys' fees for the first time in June 2015. It alludes to a monthly mortgage account notice received after June 12, 2015, which is conspicuously absent. A copy of the mortgage account informational statement sent on June 20, 2015 is hereby attached as **Exhibit D**.[4] As can be seen on page 1 of **Exhibit D**, this statement contains a running total of legal fees charged to the account (fixed at $6,531.67), but no new fees were charged since the last statement. *See* **Exhibit D**, p. 1.

Further, the fact that no new legal fees were charged on or since June 12, 2015 is further evident from viewing a previous statement, such as the statement for April 20, 2015, which contains the exact same charge. A copy of the mortgage account informational statement sent on April 20, 2015 is hereby attached as **Exhibit E**. Once more, page 1 of **Exhibit E** contains a running total of charges for legal fees totaling $6,531.67, and no activity since the last statement. *See* **Exhibit E**, p. 1. Accordingly, Plaintiffs' claims began to accrue well before June 12, 2015. Other than "cherry picking" June 12, 2015 to shoehorn themselves within the one-year

---

[4] Based on the information contained in the Amended Complaint, Defendants presume that this notice, the first which could have been sent after June 12, 2015, is the notice to which Plaintiffs make reference.

10

statute of limitations, Plaintiffs cannot distinguish between notices received prior to June 12, 2015, and those received since. Accordingly, Plaintiffs' FDCPA claim is barred by the statute of limitations.

Moreover, there is no theory of continuing violations under the FDCPA for new communications which merely reference prior charges. *See Simard v. LVNV Funding, Inc.*, No. 10–11009–NMG, 2011 WL 4543956, at *1, *5 (D. Mass Sept. 9, 2011) (finding that under the FDCPA, new communications concerning old claims, or communications which are part of the course of litigation, cannot be independent "new" violations of the FDCPA, rejecting a theory of continuing violations on those grounds) (citing *Nutter v. Messerli & Kramer, P.A.*, 500 F.Supp.2d 1219, 1223 (D. Minn. 2007)). Therefore, Plaintiffs' claims—if any—begin to accrue when the first error is made, and subsequent communications merely referencing that error do not serve to "restart the clock." *See Simard*, 2011 WL 4543956, at *5; *Nutter*, 500 F.Supp.2d at 1223. Knowing that Plaintiffs were aware of their claims as early as April 2015, Plaintiffs' FDCPA claims are barred by the statute of limitations. *See Simard*, 2011 WL 4543956, at *5; *Nutter*, 500 F.Supp.2d at 1223.

      b. *Plaintiffs' Amended Complaint Cannot Relate Back To Their Original Complaint To Avoid The Statute Of Limitations*

In order for Count IV of Plaintiffs' Amended Complaint to relate back to the Original Complaint's filing date per Rule 15(c), Plaintiffs would have had to plead enough facts in their Original Complaint relating to the FDCPA claim made in the Amended Complaint to put the Trust on notice of that claim. *See McClelland v. Deluxe Financial Services, Inc.*, 431 Fed.Appx. 718, 723-25 (10th Cir. 2011); *Powermate Holding Corp. v. Phoenix Int'l Freight (In re Powermate Holding Corp.)*, No. 10–50810 (KG), 2011 WL 3654436, *1, *2 (Bankr. D. Del. Aug. 18, 2011). The Original Complaint's only reference to the FDCPA was "Plaintiffs have

11

claims against Nationstar, SPS, and Orlans Moran, pursuant to the Fair Debt Collection Practices Act, the Truth in Lending Act and Regulation X which offset will offset claim [sic] against them . . . ." Original Complaint at ¶ 16. Setting aside the fact that such a statement could hardly be said to "raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, it also does not constitute a sufficient allegation to allow relation-back. *See McClelland*, 431 Fed.Appx. at 730-31; *O'Loughlin v. National R.R. Passenger Corp.*, 928 F.2d 24, 26 (1st Cir., 1991) ("[I]f the alteration of the original statement is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense, then the amendment will not relate back and will be time barred if the limitations period has expired.") (citing 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed.)).

This case closely resembles *McClelland v. Deluxe Financial Services, Inc.*, in which the Tenth Circuit considered whether allegations in an amended complaint should be related back to the date of the original complaint. *See* 431 Fed. Appx. at 719. In that case, the original complaint contained specific allegations involving discrimination of six current and former employees on the basis of race, at the hands of specific supervisors of the defendant company. *See id.* at 719-20. However, those plaintiffs later amended their complaint to allege, instead, widespread discriminatory animus in treatment of African-American employees, and sought to certify a class comprising "all African–American persons who were denied equal pay, equal promotions and/or equal job training." *See id.* at 720. After a significant review of its own case law on the question, the Tenth Circuit held that the amended complaint could not relate back to the original complaint, as the amended complaint "alleged something different altogether." *See id.* at 730. Specifically, the amended complaint significantly changed the scope of the action from that of the original complaint, "includ[ing] a set of new and separate

allegations implicating a wider set of facts, witnesses, and proofs." *See id.* This meant that the allegations in the amended complaint could not relate back to the original complaint, and the fact that both complaints included general allegations of racial discrimination was not enough to change that fact. *See id.* (quoting *Williams v. Boeing Co.,* 517 F.3d 1120, 1133 (9th Cir 2008)); *see also O'Loughlin*, 928 F.2d at 26-27 (holding that amendment to complaint alleging damages resulting from unsafe working conditions which solely changed date of accident from August 6, 1987 to June 8, 1987 did not relate back to original filing, where plaintiff had in fact been injured on both dates, and original complaint did not provide sufficient notice to the defendant to determine of the intent to litigate the June 8 injury).

In this case, Plaintiffs had not pressed the FDCPA cause of action in their Original Complaint at all. *See* Original Complaint at ¶¶ A-G. Instead, Plaintiffs only pressed causes of action relating to the Trust's purported violation of R.I. Gen. Laws § 34-27-3.2. *See id.* In fact, Plaintiffs had only made the barest reference to the possibility that they *may* have claims against the Trust under the FDCPA in the Original Complaint. *See* Original Complaint at ¶ 16 ("Plaintiffs have claims against Nationstar, SPS, and Orlans Moran, pursuant to the Fair Debt Collection Practices Act, the Truth in Lending Act and Regulation X which offset will offset claim [sic] against them . . ."). Like in *McClelland*, the Original Complaint and Amended Complaint contain very different allegations, "implicating a wider set of facts, witnesses, and proofs." *See id.* While the Original Complaint was entirely about R.I. Gen. Laws § 34-27-3.2, and the question of whether a mediation notice had to be sent to continue the foreclosure originally scheduled in 2014, the Amended Complaint now seeks to press contract claims and claims under TILA and the FDCPA based on monthly notices sent to the Plaintiffs. *See* Amended Complaint at ¶¶ 23, 30-31, 44-45, 55. These claims, and in particular the FDCPA claim

13

in Count IV, would necessarily require a "wider set of facts, witnesses, and proofs" than the Original Complaint envisioned, and Plaintiffs' averment that they *had* claims sounding in the FDCPA cannot be enough to put the Trust, or now Nationstar, on notice of the claims now added by the Amended Complaint. *See McClelland*, 431 Fed. Appx. at 730-31; *O'Loughlin*, 928 F.2d at 26-27.

Furthermore, the Original Complaint did not even name the actual entity—Nationstar—against whom the FDCPA claims are aimed. The Original Complaint cannot be said to have fairly noticed an entity that was not even a party to it. Accordingly, Count IV under the FDCPA (and Count III under TILA, defined *infra*) cannot relate back to the Original Complaint and are barred.

Thus, where there is no theory of continuing violations for the FDCPA, and where Plaintiffs did not allege sufficient facts for either claim to relate back to their Original Complaint, this Court should dismiss Plaintiffs' claims under the FDCPA as barred by the statute of limitations. *See McClelland*, 431 Fed. Appx. at 730-31; *Simard*, 2011 WL 4543956, at *5; *Nutter*, 500 F.Supp.2d at 1223.

2. Plaintiffs Fail To Plead Sufficient Facts To Establish An FDCPA Violation

Count IV of the Amended Complaint also fails to state a claim upon which relief can be granted, because it does not present a plausible claim for relief under the FDCPA. *See Elsevier, Inc.*, 732 F.3d at 81; *Campagna*, 334 F.3d at 155; *Thomas*, 542 F.3d at 948. In their complaint, Plaintiffs allege the following in support of Count IV:

> 52. Nationstar since June 12, 2015 has committed several violations of the FDCPA and is liable to the Plaintiffs for compensatory damages, statutory damages, and attorney fees and costs for violations.
>
> 53. Nationstar has used multiple followings [sic] unfair and

14

>unconscionable means to collect or attempt to collect a debt against the Plaintiffs.
>
>54. On each of the periodic statements sent to the Plaintiffs in an attempt to collect a debt since June 12, 2015, Nationstar has violated 15 U.S.S. 1692e [sic] by misstating the amount of the debt due to the owner of the mortgage note.
>
>55. Each of these periodic monthly statements sent to the Plaintiffs referenced amount due to the owner of the mortgage note which contained legal fees and costs and expenses improperly charged to the Plaintiffs' mortgage loan. As a result, Nationstar made a false statement as to the amount of the debt due to the owner of the mortgage note on each statement sent to the Plaintiffs or their attorney in an attempt to collect a debt.

Amended Complaint, ¶¶ 52-55.

None of these allegations can rise above "the speculative level" to actually serve as facts which can sustain a "material element necessary to sustain recovery under" the FDCPA. *See Elsevier, Inc.*, 732 F.3d at 81; *Campagna*, 334 F.3d at 155; *Thomas*, 542 F.3d at 948. Paragraphs 52 and 53 contain nothing more than conclusory allegations stating that "Nationstar has committed several violations of the FDCPA" and "has used multiple . . . unfair and unconscionable means to collect or attempt to collect a debt." *See* Amended Complaint at ¶¶ 52-53. Paragraph 54 similarly contains a conclusory allegation: that the amount owed by the Plaintiffs is mis-stated in the monthly statements purportedly received by the Plaintiffs. *See id.* at ¶ 54. This paragraph contains no further support for the allegation than the bare statement "Nationstar has violated [the FDCPA] by misstating the amount of the debt due." *See id.* This is akin to the "labels and conclusions" and the "formulaic recitation of the elements of a cause of action" which the First Circuit has already rejected. *See Thomas*, 542 F.3d at 948. There is no fact alleged to explain, for example, what basis Plaintiffs have to determine that the amounts quoted are incorrect. *See* Amended Complaint at ¶ 54. Finally, Paragraph 55 suffers from the same defect, merely concluding that legal fees and costs charged to the Plaintiffs were improper,

15

without further evidence or factual allegations explaining that conclusion. *See id.* at ¶ 55. Where Plaintiffs have failed to offer a single factual predicate for their claims in Count IV, that count cannot be sustained. *See Elsevier, Inc.*, 732 F.3d at 81; *Campagna*, 334 F.3d at 155; *Thomas*, 542 F.3d at 948.

        3. **Plaintiffs Cannot Sustain Actions Under The FDCPA Where Such Actions Are Dependent On The Meritless Breach Of Contract Claims**

Finally, Count IV of the Amended Complaint fails to state a claim upon which relief can be granted, as it is completely derivative of Counts I and II. Under the terms of the Mortgage, at Section 9,

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . . Lender's actions can include . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.

*See* **Exhibit B**, pp.7-8. This language gives the Trust the right to charge Plaintiffs for reasonable legal fees both where the "Borrower" (defined within the Mortgage as the Plaintiffs, *see* **Exhibit B**, p. 1) defaults on its obligations and where legal proceedings which might affect the mortgagee's rights under the Mortgage are instituted. *See* **Exhibit B**, pp. 7-8. In this case, both of these conditions are true; Plaintiffs are in default, and Plaintiffs originally instituted this suit in an effort to significantly affect the Trust's interest in the Mortgage, namely by hampering the ability of the Trust to foreclose on its interest. *See* Original Complaint at ¶¶ B, D (seeking permanent injunctions preventing foreclosure of the Trust's interest). As a result, the Trust is entitled to charge Plaintiffs its reasonable attorneys' fees in defending this action and enforcing its rights under the Note and Mortgage.

16

Despite this contractual provision, Plaintiffs now seek to challenge the appropriateness of these charges by claiming that that Trust improperly charged its legal fees and costs to Plaintiffs, resulting in inaccurate charges to the Plaintiffs' monthly loan statements which put those statements in violation of the FDCPA. *See* Amended Complaint at ¶¶ 54-55 (admitting that monthly Mortgage notices were received and specifically pleading that the error in those notices was "legal fees and costs and expenses improperly charged to the Plaintiffs' mortgage loan."). In short, Plaintiffs' claims *appear* to work as follows: (1) the Trust allegedly failed to send notices required under the Note and Mortgage and the implied covenant of good faith and fair dealing (Counts I and II), as a consequence; (2) the Trust's legal fees in enforcing its rights allegedly cannot be charged to the Plaintiffs; therefore, (3) the monthly Mortgage notices received by the Plaintiffs erroneously included charges for legal fees violating the FDCPA (Count IV). In other words, the alleged violation the FDCPA is dependent upon a finding that the legal services charged to the Plaintiffs were improper. However, where the Trust demonstrably sent the Plaintiffs the notices required by the Note and Mortgage and upheld the covenant of good faith and fair dealing, where Plaintiffs have failed to perform the covenants and agreements contained in the Mortgage, and where no additional violation of the FDCPA is alleged, Count IV is rendered moot by the ineffectiveness of Counts I and II.

      **D.    Count III Fails As A Matter Of Law Where No Notices Were Required Under TILA.**

Plaintiffs allege in Count III that the Trust violated the Truth in Lending Act, 12 U.S.C. § 1601, *et seq.* ("TILA"), because of alleged deficiencies in periodic notices sent to the Plaintiffs. *See* Amended Complaint at ¶¶ 42-45. However, Count III fails because there is no requirement to send periodic statements to borrowers whose debt was discharged in bankruptcy. *See Galle v. Nationstar Mortgage, LLC*, No: 2:16-cv-00407-FtM-38CM, 2016 WL 4063274, at

*1, *4 (M.D. Fla. June 29, 2016); *Roth v. Nationstar Mortgage, LLC*, No: 2:15-cv-783-FtM-29MRM, 2016 WL 3570991, at *1, *7 (M.D. Fla. June 1, 2016); Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 62,993-01 (October 23, 2013). "The Bureau of Consumer Financial Protection has clarified that a periodic statement is not required for mortgage debts discharged in bankruptcy proceedings." *Roth*, 2016 WL 3570991, at *7; *see also Galle*, 2016 WL 4063274, at *4 ("TILA does not require Defendant to send Plaintiff the loan statements at issue.") In this case, the Plaintiffs have gone through bankruptcy, and their mortgage debt was discharged. *See* Order Discharging Debtors at Docket No. 185, *In re Linares*, No. 08-11860 (Bankr. D.R.I. Feb. 1, 2013). As a result, periodic notices are not required by TILA. *See Roth*, 2016 WL 3570991, at *7; *Galle*, 2016 WL 4063274, at *4. Because the notices were never required in the first place, providing deficient notices cannot be a violation of the law. *See Roth*, 2016 WL 3570991, at *7; *Galle*, 2016 WL 4063274, at *4. As a result, the Plaintiffs' Count for violations of TILA should be dismissed with prejudice.

## IV.    **CONCLUSION**

For the reasons set forth above, the Trust and Nationstar respectfully request that this Court grant their Motion to Dismiss the Plaintiffs' Amended Complaint.

        U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE SPECIALTY UNDERWRITING AND RESIDENTIAL FINANCE TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-BC4 AND NATIONSTAR MORTGAGE, LLC

By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

*/s/ Santiago H. Posas*
David J. Pellegrino (#7326)
Santiago H. Posas (#9519)
40 Westminster Street, Suite 1100
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
djp@psh.com
shp@psh.com

DATED: September 6, 2016

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 6, 2016.

/s/ Santiago H. Posas

2835676_5/5427-631